1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   EMMA L. GONZALEZ,                    No.  2:13-cv-1359-EFB

10              Plaintiff,

11       v.                              ORDER

12   CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
13
                Defendant.
14

15

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and

18   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  The parties'

19   cross-motions for summary judgment are pending.  For the reasons discussed below, the court

20   grants plaintiff's motion, denies defendant's motion, and remands the matter for further

21   proceedings.

22   I.       BACKGROUND

23          Plaintiff filed an application for a period of disability and DIB on October 4, 2010, and an

24   application for SSI on July 15, 2011, alleging that she had been disabled since July 12, 2010.

25   Administrative Record ("AR") 100-106, 107-116.  Plaintiff's claims were denied initially and

26   upon reconsideration.  *Id*. at 58-62, 64-67.  On February 1, 2012, a hearing was held before

27   administrative law judge ("ALJ") Timothy S. Snelling.  *Id*. at 23-52.  Plaintiff was represented by

28   counsel at the hearing, at which she testified.  *Id*.

                                              1

On March 2, 2012, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d),  and 1614(a)(3)(A) of the Act.[1]  *Id.* at 10-18.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since July 12, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

/////

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3.  The claimant has the following medically severe combination of impairments: Charcot left food due to diabetic neuropathy, a history of foot ulcers and infections, left foot deformity, history of webspace infection 4th right forefoot with severe neuropathic and vascular compromise and a history of edema in both feet (20 CFR 404.1520(c) and 416.920(c)).

    * * *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416967(a) because she can stand/walk for 2 hours and sit for up to 6 hours in an 8-hour workday.  On some days, she may need to elevate both feet for five minutes every two hours; lift and carry up to 10 pounds occasionally and frequently; and she can perform occasionally the climbing of ladders, ropes, and scaffolds.

    * * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    * * *

7.  The claimant was born on May 7, 1970 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR. § 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    * * *

3

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 12, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 12-18.

Plaintiff's request for Appeals Council review was denied on May 8, 2013, leaving the ALJ's decision as the final decision of the Commissioner of the Social Security. *Id*. at 1-5.

## II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.   ANALYSIS

Plaintiff argues that the ALJ erred in (1) rejecting his treating physician's opinion without legally sufficient reasons; (2) discrediting plaintiff's testimony without clear and convincing reasons; and (3) improperly finding her disabled based on the grids without the use of a vocational expert.

4

A. The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ erred by rejecting the medical opinion of her treating physician, Dr. Shock, without providing legally sufficient reasons. ECF No. 18 at 13. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Here, the ALJ found that plaintiff had the RFC to perform a wide range of sedentary work because she could stand/walk for 2 hours and sit for up to 6 hours in an 8-hour workday. AR 13. In reaching this finding, the ALJ accorded reduced weight to the opinion of plaintiff's treating physician, Dr. Shock, while giving "some considerable weight" to the opinion of consultative examining physician Dr. Schwartz and some weight to opinions from state agency non-examining physicians. *Id*. at 14-17.

/////

5

1        At the request of plaintiff, Dr. Shock provided a letter describing plaintiff's medical

2   history and an opinion regarding her functional capacity.  *Id*. at 199.  Dr. Shock reported that

3   plaintiff suffers from severe small vessel diabetic neuropathic disease, with severe neuropathic

4   sensory loss and midfoot collapse.  *Id*. at 200.  Dr. Shock opined that physical activities such as

5   standing, walking, lifting, or carrying objects would significantly increase the risk of diabetic

6   morbidity.  *Id*.  He specifically noted that due to her severe left foot deformity plaintiff was

7   precluded from standing or walking "much more than 5 minutes per hour, even with special

8   shoes"  *Id*.  Subsequently, Dr. Shock further opined that plaintiff could not sit for more than two

9   hours without elevating her foot.  *Id*. at 233.

10        On February 17, 2011, plaintiff underwent a comprehensive internal medicine evaluation,

11   which was performed by Dr. Jonathan Schwartz.  *Id*. at 201-204.  Dr. Schwartz diagnosed

12   plaintiff with left foot pain, likely secondary to diabetic neuropathy and foot ulcers and infections.

13   *Id*. at 204.  It was his opinion that plaintiff was limited to walking, standing for 6 hours; had no

14   limitations in sitting or lifting; no workplace environmental limitations; and no manipulative

15   limitations.  *Id*.

16        The record also contains an opinion from Dr. Taylor, a state agency non-examining

17   physician.  *Id*. at 205-210.  Dr. Taylor opined that plaintiff could lift 20 pounds occasionally and

18   10 pounds frequently; stand for at least 2 hours in an 8-hour workday; sit for a total of 6 hours in

19   an 8-hour work day; and was unlimited in her ability to push and pull.  *Id*.  *Id*. at 206.  Dr. Taylor

20   further opined that plaintiff could occasionally climb ladders, ropes, and scaffolding and could

21   frequently balance, stoop, kneel, crouch, and crawl.  *Id*. at 208.  On June 23, 2011, Dr. Ahmed, a

22   state agency non-examining physician, opined that plaintiff could perform light work.  *Id*. at 227.

23        The ALJ gave "less weight" to Dr. Shock's opinion, which was contradicted by Drs.

24   Schwartz, Taylor, and Ahmed's opinions.  The ALJ stated that Dr. Shock's opinion was "too

25   limiting based on his own treatment and findings."  AR 16.  He also noted that that Dr. Shock's

26   opinion was "inconsistent with the other substantial evidence of record as a whole, including the"

27   opinions of Dr. Schwartz and the reviewing state agency medical doctors.  *Id*. at 17.

28   /////

6

1    An ALJ may disregard a medical opinion when it is internally inconsistent. *See* 20 C.F.R.

2    § 416.927(c)(4). Further, an inconsistency in a doctor's opinions, observations, and clinical notes

3    "is a clear and convincing reason for not relying on the doctor's opinion" regarding the claimant's

4    abilities or limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Johnson v.*

5    *Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Here, Dr. Shock specifically opined that plaintiff's

6    impairments would limit her to standing for only five minutes per hour. *Id*. at 259-266. As

7    observed by the ALJ, Dr. Shock's own treatment notes do not support this extreme opinion. AR

8    17. Treatment notes from June 30, 2010 indicated that ulceration to the base of plaintiff's right

9    hallux was fully resolved. AR 263. Dr. Shock noted that plaintiff had developed a Charcot foot

10   on the left side, but there was no acute Charcot neuropathic treatment that needed to be rendered.

11   *Id*. Plaintiff was advised to "back off her activity level." *Id*.

12   The January 3, 2011 letter containing Dr. Shock's opinion indicated that plaintiff

13   originally presented with an infection of the right hallux, with possible dysvascular eschar. *Id*. at

14   199. Plaintiff was seen on several occasions for wound debridement and antibiotic therapy,

15   which resolved this problem within 2 to 3 months. *Id*. Treatment notes from May 12, 2011,

16   stated that plaintiff's impairments of severe neuropathis disease, insensate feet as well as history

17   of Charcot neuropathy could be reasonably managed by limiting the amount of ambulation and by

18   utilizing appropriate shoes. *Id*. at 261. Notes from March 14, 2011, indicate that plaintiff had

19   resolving ulceration to the dorsal distal right foot, but plaintiff seemed "to be doing well." *Id*.

20   These treatment notes certainly indicate that plaintiff suffers foot impairments that limit

21   her ability to walk and stand. However, they also shows that many of plaintiff's foot problems

22   were successfully resolved and that plaintiff's impairment could be managed. Accordingly, the

23   ALJ was permitted to find that Dr. Shock's opinion overstated and inconsistent with his own

24   treatment notes.

25   The ALJ also concluded that Dr. Shock's opinion was inconsistent with other evidence in

26   the record, including the opinion of Dr. Schwartz and reviewing state agency physicians. *Id*. at

27   17. Dr. Schwartz's examined plaintiff on February 17, 2011. AR 201-204. He observed that

28   plaintiff was able to walk into the room without assistance. *Id*. at 202. Plaintiff had normal

1    muscle bulk and tone in all major muscle groups in the upper and lower extremities bilaterally;

2    5/5 strength in the upper and lower extremities bilaterally; grossly intact sensation throughout

3    upper and lower extremities bilaterally, including sensation to light touch and pinprick in all

4    fingers and toes.  *Id*. at 204.  Plaintiff also had valgus deformity and swelling in the left foot, with

5    slight decreased range of motion of the left ankle.  *Id*.

6           Based on his examination, Dr. Schwartz found that plaintiff could stand and walk for up to

7    six hours based on his own findings.  *Id*.  His opinion constitutes substantial evidence supporting

8    the ALJ's finding that contrary to Dr. Shock's opinion plaintiff retains the functional capacity to

9    walk and stand for more than 5 minutes every hour.  *See Tonapetyan*, 242 F.3d 1144, 1149 (9th

10   Cir. 2001) (holding that an examining physician's opinion constitutes substantial evidence

11   because it relies on independent examination of the claimant); *Andrews v. Shalala*, 53 F.3d 1035,

12   1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and

13   the opinion of a nontreating source is based on independent clinical findings that differ from those

14   of the treating physician, the opinion of the nontreating source may itself be substantial evidence;

15   it is then solely the province of the ALJ to resolve the conflict").

16          The ALJ also found that Dr. Shock's opinion was inconsistent with the opinions from Dr.

17   Taylor and Dr. Ahmed.  Their opinions support the ALJ's finding that plaintiff retained the ability

18   to walk and stand for 2 hours in an 8-hour workday, and the ALJ properly considered these

19   opinions in assessing what weight to give Dr. Shock's opinions.  *See* 20 C.F.R. §§ 404.1527(c)(4)

20   ("the more consistent an opinion is with the record as a whole, the more weight we will give to

21   that opinion"); 20 C.F.R. § 404.1513(c) (findings by state agency physicians constitute proper

22   evidence from non-examining sources); SSR 96–6p ("State agency medical . . . consultants are

23   highly qualified physicians . . . who are experts in the evaluation of the medical issues in

24   disability claims."); *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir.2002) ("opinions of non-

25   treating or non-examining physicians may also serve as substantial evidence when the opinions

26   are consistent with independent clinical findings or other evidence in the record").

27          Accordingly, the ALJ provided legally sufficient reasons for discounting Dr. Shock's

28   opinion.

1        B. <u>The ALJ erred by not providing any reason for discrediting plaintiff's testimony.</u>

2        Plaintiff next argues that the ALJ erred in finding that she was not credible.  ECF No. 18

3   at 18-21.  In evaluating whether subjective complaints are credible, the ALJ should first consider

4   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

5   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ then

6   may consider the nature of the symptoms alleged, including aggravating factors, medication,

7   treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the

8   applicant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

9   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

10  prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d

11  1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

12  severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

13  relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

14  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

15  in determining whether the alleged associated pain is not a significant nonexertional impairment.

16  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

17  on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.

18  1989), which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6

19  (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

20  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

21  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).  Furthermore, "The

22  ALJ must specifically identify what testimony is credible and what testimony undermines the

23  claimant's complaints."  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir.

24  2009) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

25       At the February 1, 2012 hearing, plaintiff testified that she used a motorized cart for the

26  past two years due to difficulty with walking.  AR 34.  She stated that she used the cart to

27  complete various activities such as shopping.  *Id*. at 35.  She further stated that she needed the cart

28  because she experiences pain while walking.  *Id*.  Plaintiff also testified that she elevates her feet

1    for a good portion of the day, which alleviates pain and swelling.  *Id*. at 40.  She further stated

2    that she didn't believe she could work because she needs to elevate her feet and she cannot sit for

3    long periods of time without pain.  *Id*. at 40-41.

4         The ALJ provided a summary of plaintiff's testimony regarding her functional limitations

5    and found that plaintiff's "medically determinable impairments could reasonably be expected to

6    cause the alleged symptoms" but that "plaintiff's statements concerning the intensity, persistence

7    and limiting effects of those symptoms were not credible to the extent they were inconsistent with

8    the above residual functional capacity assessment." AR 14.  However, the ALJ failed to provide

9    any reason to support his finding plaintiff's statements were not credible.  As discussed above, the

10   ALJ was required to provide specific and legitimate reasons for rejecting plaintiff's testimony.

11   His general and conclusory statement that plaintiff was not credible is insufficient.  *See Lester*, 81

12   F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is

13   not credible and what evidence undermines the claimant's complaint.").

14        Defendant argues that the ALJ's decision notes that plaintiff was not undergoing sufficient

15   treatment for her condition, reported a wide range of daily living activities, and that she had

16   sought job opportunities subsequent her alleged disability.  ECF No. 20 at 17; *see* AR 14.

17   Plaintiff contends, however, that her reported daily activities, medical records, an interest in job

18   opportunities do not constitute clear and convincing reasons.  ECF No. 18 at 22-24.  While the

19   record might contain evidence undermining plaintiff's credibility, the ALJ completely failed to

20   identify the reasons he relied on in giving reduced weight to plaintiff's credibility.  The ALJ

21   discussed plaintiff's activities, provided a summary of plaintiff's medical records, and noted that

22   plaintiff expressed interest in other job opportunities, but never stated that such evidence formed

23   the basis of his credibility determination.  Indeed, he completely failed to identify the basis for his

24   adverse credibility finding.  As the ALJ did not rely on these reasons, they are not a proper basis

25   for upholding the ALJ's credibility finding.  *See Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F.

26   Supp. 1273, 1276 n. 2 (C.D. Cal. 1996) ("[T]he Commissioner's decision must stand or fall with

27   the reasons set forth in the ALJ's decision."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.

28   1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion").  As the ALJ

1    provided no explanation for his adverse credibility finding, the matter must be remanded for

2    further consideration.[2]

3    IV.    <u>CONCLUSION</u>

4         The ALJ erred by not providing clear and convincing reasons for rejecting plaintiff's

5    testimony.   Therefore, it is hereby ORDERED that:

6         1.  Plaintiff's motion for summary judgment is granted;

7         2.  The Commissioner's cross-motion for summary judgment is denied;

8         3.  The matter is remanded for further proceedings consistent with this order; and

9         4.  The Clerk is directed to enter judgment in the plaintiff's favor.

10   DATED:  September 26, 2014.

11

12                                   EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
_____

28      [2]  As the matter must be remanded for further consideration of plaintiff's credibility, the
     court declines to address plaintiff's remaining argument.

                                          11